UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DIANE FORD,

        Plaintiff,

vs.                                 Case No. 3:09-cv-264-J-25MCR

MICHAEL ASTRUE, U.S. Commissioner of
Social Security,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the case is remanded for further proceedings.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Social Security Income ("SSI") on February 3, 2005. (Tr. 18). The Social Security Administration denied this application initially and on reconsideration. (Tr. 41-59, 61-63). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ"), which was held on March 22, 2007. (Tr. 401-14). The ALJ issued a decision on May 24, 2007 finding

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15).

Plaintiff not disabled. (Tr. 15-24). The Appeals Council denied Plaintiff's request for review on January 21, 2009, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 5-7). Plaintiff timely filed her Complaint in the U.S. District Court for review of the Commissioner's decision. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since October 1, 1996, due to pain in her mid and lower back, carpal tunnel syndrome ("CTS"), neck and shoulder pain, recurring cysts, muscle spasms, asthma, chronic obstructive pulmonary disease ("COPD"), and right-leg numbness. (Tr. 117, 405-13).

### B.    Summary of Evidence Before the ALJ

Plaintiff was 40 years old at the time of the ALJ's decision. (Tr. 404). She has a limited education, completing through the tenth grade, and past relevant work experience as a home health aid and dry clean sorter. Id. at 85-88, 404. Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.[2]

On January 23, 2003, Plaintiff was injured in an automobile accident and subsequently received treatment from Dr. Stephen Hickey, M.D. (Tr. 286-317, 356-99). During examinations with Dr. Hickey, Plaintiff reported weight gain, blurred vision, chest pain, painful urination, anxiety, poor memory, dizziness, headaches, insomnia, and pain

---

[2]The Court will focus primarily on the medical records of Dr. Robert Greenberg, the medical records pertaining to Plaintiff's ability to stoop, and the medical records regarding Plaintiff's CTS; as they are at issue in the instant review. See (Doc. 17).

of the neck, pelvis, and back. Id. She had a history of asthma, arthritis, diabetes, and low back pain. Id. Dr. Hickey diagnosed Plaintiff with headaches, left upper trapezius myofacial pain syndrome, asthma, psoriasis, probable diabetic neuropathy, and cervical, lumbar, and ankle sprain. Id.

MRI reports dated March 4, 2003 and April 25, 2005 evidenced mild disc bulges, mild facet arthropathy, mild disc space narrowing, and marginal osteophytes. (Tr. 120-21, 157). On April 27, 2005, Dr. Robert Greenberg, M.D. examined Plaintiff at the request of the state disability agency. (Tr. 155-59). Plaintiff described constant back pain with associated numbness and weakness in her legs. Id. During Dr. Greenberg's examination, he observed that Plaintiff appeared to be in pain when climbing on and off the examination table and walked with a waddling type of gait. Additionally, Plaintiff was unable to stoop. Id. Further, Plaintiff suffered from decreased range of motion of the lumbar spine with forward and lateral flexion and decreased range of the hip. Id. A lumbar spine x-ray showed moderate disc disease and degenerative spondylosis as well as some mild disc space narrowing at L1-2 and L2-3 with moderately large endplate marginal osteophytes and small marginal osteophytes on the remainder of the lumbar spine. Id. Dr. Greenberg diagnosed Plaintiff with chronic low back pain, probably secondary to lumbar osteoarthritis, shortness of breath, probably secondary to morbid obesity and previous cigarette smoking, and recurrent painful groin cysts. Id.

On August 8, 2005, Dr. Eric C. Puestow, M.D. completed a Physical Residual Functional Capacity Assessment of Plaintiff. (Tr. 200-07). Dr. Puestow opined Plaintiff was capable of lifting 10 pounds occasionally; lifting 20 pounds frequently; standing

and/or walking 6 hours in an 8-hour workday; sitting 6 hours in an 8-hour workday; and unlimited pushing and pulling. Id. at 201. Additionally, Dr. Puestow found Plaintiff was capable of occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Id. at 202.

On December 26, 2006, Plaintiff had bilateral hand and wrist x-rays performed which evidenced early rheumatoid arthritis. (Tr. 280-81). On February 12, 2007, Dr. Michael Pulley, M.D. examined Plaintiff for pain in her hands. Id. at 277-79. At that time, Plaintiff stated she had been experiencing right and left hand and wrist numbness for the past three to four months. Id. Additionally, she was experiencing numbness in all fingers and some pain on her posterior forearm, radiating up as high as the elbow, and her hands were getting a "hot" sensation. Id. Plaintiff reported dropping items, feeling her hands were weak, and not sleeping well at night. Id. Further, Plaintiff stated she been wearing wrist braces at night and during the day without noticeable improvement. Id. Dr. Pulley's examination of Plaintiff revealed skin changes around her nail beds and decreased strength and pinprick sensation in both of her hands. Id. EMG testing evidenced bilateral median nerve entrapment at both wrists which was moderately severe in nature with complete loss of sensory and mixed nerve responses as well as chronic motor axon degeneration. Id. Dr. Pulley opined Plaintiff would need to undergo carpal tunnel release surgery to improve. Id.

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A). The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 416.920(a)(2)(I). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(a)(2)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926), she is disabled. 20 C.F.R. § 416.920(a)(2)(iii). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(2)(iv). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 416.920(a)(2)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 3, 2005, the application date. (Tr. 20). At step two, the ALJ found Plaintiff suffered from the following severe impairments: obesity, lumbar/cervical degenerative disc disease, CTS, and a history of asthma. Id. At step three, the ALJ found Plaintiff did not have an impairment, or combination of

impairments, that met or equaled any listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). Id.

The ALJ further determined Plaintiff had the residual functional capacity ("RFC") to perform a range of light work.[3] Specifically, the ALJ found Plaintiff was able to:

> [S]it, stand, and/or walk 6 hours in an eight-hour workday, lift up to 20 pounds occasionally and 10 pounds frequently, and occasionally perform all postural activities.

Id. at 20-22. However, due to the possibility of breathing difficulties, the ALJ found Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. Id. In reaching Plaintiff's RFC, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting factors of her alleged symptoms not completely credible. Id. at 22.

At step four, the ALJ determined Plaintiff could not perform any of her past relevant work. Id. Accordingly, the ALJ proceeded to step five where he utilized the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2, rule 202.18, and determined Plaintiff could perform other jobs existing in significant numbers in the national economy and, therefore, was not disabled. Id. at 23.

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff argues three issues on appeal. First, Plaintiff contends the ALJ erred in finding Plaintiff was capable of occasional stooping. (Doc. 17, pp. 8-12). Second, Plaintiff argues the ALJ erred in failing to include any manipulative limitations in Plaintiff's RFC assessment. Id. at 12-15. Third, Plaintiff contends the ALJ improperly relied upon the Medical-Vocational Guidelines instead of obtaining the advice of a vocational expert. Id. at 15-17. The Court will consider each of these issues.

#### 1. Whether the ALJ erred in finding Plaintiff was capable of occasional stooping.

Plaintiff argues the ALJ erred in finding she was capable of occasional stooping. (Doc. 17, pp. 8-12). Specifically, Plaintiff contends the ALJ erred in failing to articulate his reasons for not crediting the opinion of Dr. Greenberg, who noted Plaintiff was "unable to stoop." Id. The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff could occasionally stoop and the record contains no evidence which would support a determination that Plaintiff is incapable of stooping. (Doc. 18, pp. 5-7).

At the request of the state disability agency, Dr. Greenberg examined Plaintiff. (Tr. 155-59). During the course of his examination, Dr. Greenberg noted:

> There was lumbar pain climbing on and off my examination table; however no lumbosacral spasm was present. There was decreased ROM of the lumbar spine and both hips. [Plaintiff] walked with a waddling gait due to her obesity but she did not require any assistance in ambulation. She was able to tandem walk and could walk on her heels and toes *but was unable to stoop.* There was positive leg strength raising pain bilaterally at 30 degrees. No motor, sensory, or reflex abnormalities were

>noted. No evidence of active, inflammatory arthritis was present.

(Tr. 156).

It is evident from the above-mentioned note that Dr. Greenberg's statement that Plaintiff was "unable to stoop" was not his objective medical opinion regarding Plaintiff's functional limitations. Rather, it was Dr. Greenberg's recordings of Plaintiff's representations and his initial observations. Such a note does not constitute, and was properly not considered by the ALJ to be, Dr. Greenberg's professional medical opinion and assessment of Plaintiff's functional limitations. While the ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for his decision in order to enable a reviewing court to determine whether the decision was based on substantial evidence, Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981), "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). Indeed, the ALJ properly considered Dr. Greenberg's report as a whole (Tr. 22), and was not required to specifically consider the note in question as a physician's opinion regarding Plaintiff's limitations. Certainty, the ALJ is not required to include every symptom which Plaintiff represents to an examining physician in his RFC assessment.

Plaintiff failed to cite any evidence, other than Dr. Greenberg's note, supporting a determination that Plaintiff was completely unable to stoop. However, there is evidence of record which supports the ALJ's conclusion Plaintiff was capable of stooping. For example, Dr. Puestow opined Plaintiff was capable of occasional stooping. (Tr. 202). Additionally, MRI reports evidenced *mild* disc bulges, *mild* facet arthropathy, *mild* disc

space narrowing, and *marginal* osteophytes in her back. (Tr. 120-21, 157) (emphasis added). The ALJ alone is responsible for assessing Plaintiff's RFC, 20 C.F.R. § 416.946(c), and the Court finds substantial evidence supports his determination that Plaintiff was capable of occasional stooping.

> **2. Whether the ALJ erred in failing to include manipulative limitations in Plaintiff's RFC assessment.**

Plaintiff contends the ALJ erred in failing to find Plaintiff suffered from any manipulative limitations when the record and the ALJ's decision demonstrate Plaintiff suffered from severe CTS. (Doc. 17, pp. 12-15). In response, the Commissioner argues Plaintiff's contention that she suffers from manipulative limitations is based solely on her own assertions and not objective medical evidence. (Doc. 18, pp. 7-9). The Commissioner further asserts the ALJ erred in finding Plaintiff's CTS even constituted a severe impairment because Plaintiff had not shown her CTS lasted for a continuous period of at least twelve months. Id. at 9-10.

As an initial matter, the Court does not agree with the Commissioner's contention that Plaintiff is attempting to establish she suffers from manipulative limitations based solely on subjective complaints and not objective medical evidence. To the contrary, on December 26, 2006, bilateral hand and wrist x-rays evidenced signs of early rheumatoid arthritis. (Tr. 280-81). Then in February 2007, Plaintiff was actually diagnosed with CTS. Id. at 277-79. Additionally, EMG testing evidenced bilateral median nerve entrapment in both Plaintiff's wrists, which was moderately severe in nature, with complete loss of sensory and mixed nerve responses as well as chronic motor axon

degeneration. Id. Furthermore, on February 12, 2007, Dr. Pulley opined Plaintiff would need to undergo carpal tunnel release surgery in order to improve.[4] Id. at 278.

The RFC is an assessment based on all the relevant evidence of a claimant's remaining ability to work despite her impairments. 20 C.F.R. § 404.1545(a); Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997). In evaluating a claimant's RFC, the ALJ is required to consider all of the claimant's impairments, including the subjective symptoms. Id. SSR 96-8p provides, in relevant part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

In doing so, the assessment must address both the remaining exertional and non-exertional limitations of the claimant.[5] SSR 96-8p; Stanton v. Astrue, 617 F. Supp. 2d 1205 (M.D. Fla. 2008). The purpose of the function-by-function assessment

---

[4] The Court notes that the subjective evidence also suggests Plaintiff suffered from manipulative limitations as a result of her CTS. Plaintiff reported numbness in all of her fingers and pain on her posterior forearm, radiating as high as the elbow, and she described her hands as getting hot. (Tr. 277-79). Additionally, Plaintiff reported dropping items, feeling her hands were weak, and wearing wrist braces. Id. Furthermore, at the hearing, Plaintiff told the ALJ she had CTS and rheumatoid arthritis in her hands. Id. at 405. She testified that her hands were one of her biggest medical problems and described difficulty with reaching, grabbing, twisting, and picking up items with her hands. Id. at 408, 411-13.

[5] The terms exertional and nonexertional describe types of functional limitations or restrictions resulting from a medically determinable physical or mental impairment. See SSR 96-4; see also Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004). Exertional limitations affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling. Id. Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands. Id.

requirement is to ensure that the ALJ does not overlook some of the claimant's limitations and erroneously determine a claimant's exertional level of work. SSR 96-8p. A proper RFC assessment must also include a narrative discussion of the ways in which the evidence supports each conclusion, citing medical findings and non-medical observations. Id.

While the ALJ admitted that testing confirmed CTS "which required the use of wrist braces and results in weakness and numbness of the hands" and he classified the condition as severe (Tr. 22), the ALJ completely omits any meaningful discussion regarding whether or not Plaintiff suffered from any manipulative limitations due to the condition. In doing so, the Court finds the ALJ overlooked an area of limitation that had the potential to affect Plaintiff's RFC. On remand, the ALJ is directed to provide a more detailed discussion of Plaintiff's RFC, specifically including a discussion of Plaintiff's manipulative capabilities and limitations.[6]

As for the Commissioner's contention that the ALJ erred in finding Plaintiff's CTS constituted a severe impairment because Plaintiff has not shown her CTS lasted for a continuous period of twelve months, (Doc. 18, pp. 9-10), the Court finds this argument does not warrant affirmation of the ALJ's decision. A finding of disability may be based on a conclusion that a severe impairment or combination of impairments "has lasted or *can be expected* to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A) (emphasis added). In the instant case, it is

---

[6]The Court is not making a determination as to whether Plaintiff suffers from manipulative limitations as a result of her CTS. Rather, the Court is addressing the ALJ's lack of analysis regarding the same.

certainly feasible that the ALJ expected Plaintiff's CTS to last for a continuous period of at least twelve months. Again, Plaintiff was diagnosed with CTS in February 2007. (Tr. 277-79). At that time, Plaintiff stated she had been experiencing right and left hand and wrist numbness for the past three to four months. Id. According to Dr. Pulley, "[Plaintiff] was likely to require carpal tunnel release surgery to improve." Id. at 278. At the time of the ALJ's decision on May 24, 2007, Plaintiff had not received carpal tunnel release surgery. Therefore, the ALJ properly found Plaintiff's CTS qualified as a severe impairment because it was expected to last for at least twelve months.

However, because the Court is remanding the case for the ALJ to re-evaluate Plaintiff's manipulative limitations, it will direct the ALJ to re-evaluate the severity of Plaintiff's CTS as well.

### 3. Whether the ALJ improperly relied on the Medical-Vocational Guidelines to determine Plaintiff could perform other work.

Plaintiff contends that the ALJ erred when he relied upon the Medical-Vocational Guidelines (the "grids") to determine the existence of work in the national economy that Plaintiff could perform, instead of employing a vocational expert for such a determination. (Doc. 17, pp. 15-17). In the Eleventh Circuit, "[e]xclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985).

In the instant case, the ALJ's findings reflect that Plaintiff suffered from two non-exertional impairments: (1) Plaintiff can only occasionally perform postural activities,

and (2) Plaintiff needs to avoid "concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc." (Tr. 20-22). The Commissioner argues that Plaintiff's non-exertional limitations would reduce her ability to perform basic work skills only slightly, if at all, and therefore the ALJ may rely on the grids. (Doc. 18, pp. 10-13).

In <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989), an ALJ found that the claimant had non-exertional limitations performing complex tasks and tolerating extraordinary stress. The ALJ found that these limitations reduced the full range of light work only slightly and therefore applied the grids to determine that the plaintiff was not disabled. <u>Id.</u> The Eleventh Circuit concluded that this was reversible error and stated:

> "It is only when the claimant can clearly do unlimited types of light work, … that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy."

<u>Id.</u> at 1202 (citing <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981)(emphasis in original)).

The Eleventh Circuit reached a similar conclusion in <u>Marbury v. Sullivan</u>, 957 F.2d 837 (11th Cir. 1992). There, an ALJ found that a plaintiff had a non-exertional limitation regarding working around unprotected heights or dangerous moving machinery. <u>Id.</u> at 839. He concluded that the plaintiff could perform a wide range of light work and therefore it was unnecessary to call a vocational expert. <u>Id.</u> The court of appeals reversed and stated:

> Under the ALJ's findings it is evident that claimant was not able to do unlimited types of light work, because he was precluded from work around unprotected heights or dangerous moving machinery. Expert testimony was therefore required to determine whether [plaintiff's] limitations were severe enough

> to preclude him from performing a wide range of light work. Allen, 880 F.2d at 1202. An ALJ's conclusion that a [plaintiff's] limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a vocational expert. Id. It was therefore error to rely upon the grids. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).

Id. (emphasis in original); see also Welch v. Bowen, 854 F.2d 436 (11th Cir. 1988); Baker v. Astrue, 2009 U.S. Dist. LEXIS 70659, 2009 WL 1851015 (M.D. Fla. May 25, 2009) (reversing the ALJ's decision when the ALJ resolved the case without the assistance of a vocational expert and the plaintiff suffered from occasional postural limitations and limitation to concentrated exposure to fumes, odors, dusts, gases, and poor ventilation).

Therefore, when considering Plaintiff's non-exertional limitations, the ALJ could not rely upon the grids, but was required to employ a vocational expert. Accordingly, the Court finds the ALJ's decision to resolve the instant case without the assistance of a vocational expert is reversible error.

## V. CONCLUSION

For the reasons stated herein, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** the matter to the ALJ with instructions to: (1) re-evaluate whether Plaintiff's carpal tunnel syndrome constitutes a severe impairment; (2) reconsider Plaintiff's combination of impairments to determine Plaintiff's residual functional capacity, specifically assessing Plaintiff's exertional and non-exertional limitations; (3) after reconsidering Plaintiff's combination of impairments to

determine her residual functional capacity, and if he finds Plaintiff is unable to perform a full range of work at a given residual functional level or has non-exertional impairments that significantly limit her basic work skills, propound a hypothetical to a vocational expert that clearly sets out all of Plaintiff's limitations; and (4) conduct any other proceedings deemed appropriate. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **However, this order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  22nd  day of April, 2010.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record